UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DAVID ZAIRE,

                           Plaintiff,

       v.                                                   9:04-cv-0895

THOMAS G. EAGEN, K. BELLAMY,
DONALD SELSKY, L. JUBERT, R. FOSTER,
J. ST. LOUIS, J.M. ROCQUE, B. BUCHANAN,
R. DONALDSON and B. TUCKER,

                           Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

**I.    FACTS**[1]

At all times relevant hereto, Plaintiff was an inmate at Bare Hill Correctional Facility ("Bare Hill"). On October 3, 2003, Defendant L. Jubert, Deputy Superintendent of Bare Hill issued a memorandum regarding the wearing of inmate hair. Among other things, the memorandum stated that the only braids allowed "are those that are in the <u>corn row style</u>; corn rows may not extend beyond the hairline; parts in the hair by the corn rows must be straight from front to back with no other lines, designs or symbols; the corn row hair must be braided tight to the scalp; only inmates of the Rastafarian faith may have dreadlocks; and

---

[1] Despite being provided with a notice warning of the consequences of a motion for summary judgment and the obligations in response thereto, Plaintiff submitted a statement of material facts that does not comply with N.D.N.Y.L.R. 7.1(a)(3). Accordingly, the facts set forth in Defendants' properly supported statement of material facts are deemed admitted. N.D.N.Y.L.R. 7.1(a)(3).

inmates wearing hair that extends beyond the shoulder in length must be tied back in a ponytail."

Defendants accused Plaintiff of violating the hair styles memorandum claiming that he is not of the Rastafarian faith, but, nonetheless, wore his hair in the braided locks (dreadlocks) style. Plaintiff disputes that he ever wore his hair in such a fashion.[2] Defendants directed Plaintiff to comply with the hair style memorandum. Plaintiff refused. Accordingly, on November 17, 2003, Plaintiff was charged in a misbehavior report with violating Rule 106.10, disobeying a direct order, as related to his refusal to cut his hair. After a hearing, Plaintiff was found guilty of the charge. On November 17, 2003, Plaintiff field a grievance alleging racial discrimination. That grievance was denied on January 7, 2004. In the meantime, on December 3, 2003, Plaintiff was again charged for violating Rule 106.10 for refusing to cut his hair as directed by a corrections officer. After a hearing, Plaintiff was found guilty on the charge. Plaintiff is no longer confined at Bare Hill.

## II.     STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedures governs motions for summary judgment. It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999), and may grant summary judgment only where

---

[2] Plaintiff contends that Rastifarians make a religious distinction between dreadlocks and other locks and that his hair does not qualify as a dreadlock as that term is defined by Rastifarians. Plaintiff is not of the Rastifarian faith. As will be discussed below, the term "dreadlock" is not as narrowly defined as Plaintiff would have it and the photographs of Plaintiff submitted in connection with Defendants' motion for summary judgment conclusively establish that Plaintiff did style his hair in a fashion reasonably understood to be deadlocks. Scott v. Harris, 127 S. Ct. 1769, 1776 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

"there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56( c). An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant is able to establish a prima facie basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. V. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). With this standard in mind, the Court will address Defendants' motion.

### III.    DISCUSSION

#### a.    Equal Protection

According to Plaintiff, he "challenges, as racially discriminatory, the series of decisions issued by and/or enforced by the defendants, with corresponding serious penalties, to effectively deprive African-American inmates of every hairstyle that would permit them to wear their hair long, with no similar restrictions placed upon Caucasian inmates' entitlement."

Pl's Mem. of Law at 2. Plaintiff contends that the "locks worn by Orthodox Jewish inmates have never been characterized as dreadlocks or viewed as unauthorized." Id.

Plaintiff's contention must be rejected because he has proffered no evidence upon which a fair-minded trier of fact could reasonably conclude that African-Americans are treated differently under the policy than any other group. While the hairstyle memorandum may have a disparate impact upon African-Americans in that more African-Americans will be affected by the policy, disparate impact is insufficient to show a violation of the Equal Protection Clause. Collier v. Barnhart, 473 F.3d 444, 448 (2d Cir. 2007). Disparate impact may be a "starting point," but Plaintiff must show discriminatory purpose. Id.

Plaintiff has failed to point to sufficient evidence showing such a discriminatory purpose. For example, there is no evidence that, other than certain persons exempted for religious reasons, persons of other races or colors are not subjected to the hairstyle policy. Plaintiff offers no other evidence demonstrating a discriminatory purpose.

To the extent Plaintiff challenges the basis for the hairstyle memorandum, he fails to prove a discriminatory purpose or that the policy makes any distinctions between various groups or races. See Benjamin v. Coughlin, 905 F.2d 571, 575 (2d Cir. 1990). Accordingly, his equal protection claim must be dismissed.

### b. Retaliation

Although not asserted in his Complaint, in his memorandum of law Plaintiff appears to contend that the hairstyle policy was issued "only after the plaintiff began filing grievance complaints of being repeatedly subjected to racial profiling and unwarranted/humiliating urinalysis tests upon being mistaken for a Rastafarian by correction officers." Pl.'s Mem. of Law at 3. This allegation is not supported by the record. The hairstyle memorandum was

issued in October 2003. The only evidence in the record of grievances filed by Plaintiff concerns grievances filed in November 2003. In one such grievance, Plaintiff complained of harassment by Sergeant Marlow due to Plaintiff's failure to cut his hair. Plaintiff further alleged that Sergeant Marlow deprived Plaintiff of the opportunity to participate in certain religious ceremonies. In the other grievance, Plaintiff complained that the hairstyle memorandum singles out hairstyles unique to black inmates. These grievances were filed after the October 2003 hair style policy and, therefore, there is no evidence that the hair style policy was adopted in retaliation for Plaintiff's grievances.

The record does, however, demonstrate that, shortly after Plaintiff filed his November 2003 grievances, he was again charged with failure to obey a direct order in connection with his hair style. While the temporal proximity between Plaintiff's grievance and the filing of the second charge might suggest retaliation, it is insufficient under the facts and circumstances of this case. The reasons are that: (1) one of Plaintiff's grievance was against Sergeant Marlow, whereas the misbehavior report against Plaintiff was issued by Corrections Officer D. Lepore; (2) neither Marlow nor Lepore are defendants in this case; (3) Plaintiff offers no evidence suggesting any connection between his grievance against Marlow and any action taken by Lepore; (4) while the second grievance complained of Defendant Jubert's hairstyle policy as discriminatory, Jubert did not file any misbehavior reports against Plaintiff; (5) Plaintiff offers no evidence suggesting any connection between his grievance against Jubret's policy and any action taken by Lepore; (6) a hearing was held concerning the misbehavior report issued to Plaintiff by Lepore for failing to obey an order that he conform his hair to the policy, after which he was found guilty of the charge (thereby demonstrating that Defendants had a legitimate, non-discriminatory reason for issuing the

misbehavior report); (7) the guilty finding has not been disturbed; (8) Plaintiff does not dispute that he did not follow the corrections' officers order, but only that, according to his definition, he does not have dreadlocks; and (9) there is no other evidence suggesting that Plaintiff was issued a misbehavior report because he filed a grievance.

The record is otherwise bereft of any evidence demonstrating that Plaintiff engaged in protected conduct. Although he claims to have filed various grievances concerning racial profiling and improper urinalysis tests, other than the grievances previously discussed, there is no evidence in the record of any such grievances or when they were filed. As such, Plaintiff cannot make out a prima facie case of retaliation.

### c. **Due Process**

Plaintiff also appears to make two due process claims: (1) the hairstyle policy is unconstitutionally vague; and (2) he was denied due process of law at his disciplinary hearings.

#### 1. **Void for Vagueness**

In assessing whether a rule is unconstitutionally vague, "a court must first determine whether the statute gives the person of ordinary intelligence a reasonable opportunity to know what is prohibited and then consider whether the law provides explicit standards for those who apply it." United States v. Strauss, 999 F.2d 692, 697 (2d Cir. 1993). The directive at issue meets these standards.

First, the memorandum, which was issued to "all staff/inmates," clearly stated that "'Box braids' are not authorized by Directive #4914. Only inmates of the Rastafarian faith may have dreadlocks." Plaintiff claims that his hair consists only of locks and not dreadlocks. This argument must be rejected. Jubert's memorandum does not define the term

"dreadlocks." Nevertheless, although the term "dreadlock" may have originated with those of the Rastafarian faith, it is commonly understood to be "a narrow ropelike strand of hair formed by matting or braiding." Merriam-Webster's Online Dictionary;[3] see also American Heritage Dictionary of the English Language (4th ed. 2000)[4] (defining dreadlocks as "1. A natural hairstyle in which the hair is twisted into long matted or ropelike locks. 2. A similar hairstyle consisting of long thin braids radiating from the scalp."); Dictionary.com ("a hair style, esp. among Rastafarians, in which the hair is worn in long, ropelike locks.");[5] Webster's II New Riverside Dictionary (rev. ed. 1996) ("A hairstyle created by twisting or braiding long hair into numerous thin locks."); Cambridge Advanced Learner's Dictionary ("a hairstyle in which the hair hangs in long thick twisted lengths.");[6] Williams v. Wilkinson, 134 F.3d 373 (6th Cir. 1997) (unreported) ("Dreadlocks are defined as '[h]air that has formed long matted clumps due to lack of cutting and combing'.") (quoting Webster's II New Riverside University Dictionary 404 (1984). Based upon these common understandings of the term "dreadlocks," the Court finds that the memorandum provides a person of ordinary intelligence a reasonable opportunity to know what is prohibited. Stated otherwise, Jubert's memorandum gave Plaintiff fair notice of what was prohibited.

The Court further finds that the memorandum provides sufficiently explicit standards for those who apply it. As noted, dreadlocks have a commonly understood meaning. They are readily recognizable upon observing one's hair. Determining whether

---

[3] http://mw1.merriam-webster.com/dictionary/dreadlocks.

[4] http://www.bartleby.com/61/52/D0385200.html.

[5] http://dictionary.reference.com/browse/dreadlocks.

[6] http://dictionary.cambridge.org/define.asp?key=23763&dict=CALD.

one's hair is styled in dreadlocks or not leaves little room for ad hoc, subjective interpretations.

Accordingly, the void for vagueness claim is dismissed.

### 2. Disciplinary Hearings

Plaintiff next contends that his due process rights were violated because he was not permitted to call certain witnesses at his disciplinary hearing. It is well-settled that prisoners have a right to call witnesses at prison disciplinary hearings. Ponte v. Real, 471 U.S. 491, 495 (1985). Prison officials may deny a request for witnesses that may create a risk of reprisal or undermine authority. Id. at 496. Prison officials also have "discretion to keep the hearing within reasonable limits." Id. (quoting Wolff v. McDonnell, 418 U.S. 539, 566, 94 S. Ct. 2963 (1974)). "[A] hearing officer does not violate due process by excluding irrelevant or unnecessary testimony." Kalwasinski v. Morse, 201 F.3d 103, 109 (2d Cir. 1999).

Plaintiff alleges that the hearing officers improperly excluded testimony of Imam Abdelraham Ahmed, Bare Hill's Islamic expert and Abuna, the Rastafarian expert. Plaintiff wished to introduce testimony that "his hair is erroneously characterized as dreadlocks based on stereotype." Pl.'s Mem. of Law at 5.

The Court finds that the hearing officers did not improperly exclude any witness testimony. While Plaintiff wished to challenge the misbehavior reports on the ground that he did not have dreadlocks as that term is understood within the Rastafarian faith, that was not the issue presented. The hearing officer did not need "expert" testimony on the meaning of a dreadlock. As noted, the meaning of a dreadlock is commonly understood and was not reasonably subject to dispute. The issue at Plaintiff's hearings was not over the definition of

dreadlocks, but whether Plaintiff refused to obey direct orders from a corrections officer. Neither of the witnesses Plaintiff wished to call were competent to testify on that issue because they were not present at any relevant times.  Accordingly, excluding their testimony did not amount to a violation of due process.

## IV.     CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED and Plaintiff's Complaint is DISMISSED IN ITS ENTIRETY.  The Clerk of the Court shall close the file in this matter.

IT IS SO ORDERED.

Dated: June 27, 2007

*Thomas J. McAvoy*
Thomas J. McAvoy
Senior, U.S. District Judge